IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

LESTER HARDY,                              )
                                           )
          Plaintiff,                       )
                                           )
     v.                                    )          1:12CV188
                                           )
ROBERT C. LEWIS, REUBEN F.  YOUNG,         )
CRUTCHFIELD, J. GALLIEN,                   )
                                           )
          Defendants.                      )

MEMORANDUM OPINION AND ORDER OF
UNITED STATES MAGISTRATE JUDGE

     This is a prisoner civil rights action raising Eighth Amendment and Fourteenth

Amendment claims against the administrators of a North Carolina prison.  Plaintiff Lester Hardy

contends that he has been subjected to unlawful conditions of confinement in violation of 42

U.S.C. § 1983 by Defendants Robert C. Lewis, the North Carolina Director of Prisons, Reuben

F. Young, Secretary of the Department of Public Safety, Gary Crutchfield, assistant

superintendent of programs at Scotland Correctional Institution ("Scotland"), and Joseph

Gallien who was the assistant unit manager at Scotland.  The case is before the Court on

Defendants' Motion for Summary Judgment [Doc. #24].  Plaintiff, who is proceeding *pro se*, has

responded to Defendants' Motion.  This action has been referred to the undersigned pursuant

to 28 U.S.C. § 636(c) upon the consent of the parties.  (Reference [Doc. #23].)  As further set

out below, because Plaintiff failed to exhaust his administrative remedies prior to filing suit,

Defendants' Motion will be granted and this action will be dismissed without prejudice.

I.     FACTS, CLAIMS, AND PROCEDURAL HISTORY

Plaintiff was incarcerated at the Scotland Correctional Institution during the time period relevant to this action, housed in close custody and serving a 64-year sentence for second-degree murder.  (Crutchfield Aff. [Doc. #25-1] at 1.)  Plaintiff's complaints in this case relate to a lockdown at Scotland Correctional that began on January 19, 2012, when the Scotland institution as well as many other close-custody institutions in North Carolina were placed on lockdown status due to multiple gang-related assaults and major infractions occurring within a very short period of time.  (Id. at 2.)  Plaintiff complains of almost every aspect of prison life during the lockdown period.  He complains of being given no opportunity to shower, no exercise for five days, no medical treatment, no cleaning supplies, cold food, no sunlight or fresh air, dirty showers and day room, poor ventilation, no educational programs, no religious programs, failure to respond to grievances, and a non-functioning toilet in his cell for six days.  (Id. at 3-4.) Plaintiff also contends that the lockdown caused his medical conditions to worsen, including high blood pressure, head and chest pains, swelling in hands and feet, stomach cramps, dry skin, weight loss, tight muscles, dehydration, trouble breathing, bad nerves, and clogged arteries.  (Id.) Plaintiff seeks as relief an end to the lockdown and damages.  (Id. at 4.)

Plaintiff attached to his Complaint copies of two administrative grievances.  The first is dated January 22, 2012, three days after the beginning of the lockdown.  This grievance is not signed by a correctional officer as being received as the form requires and does not bear a grievance number.  Defendants contend that Plaintiff never properly submitted this grievance. In this grievance, Plaintiff complains about many of the same conditions listed above.  Plaintiff

contends that he sent a copy of his January 22 grievance directly to the office of Defendant Lewis, the Director of the Division of Prisons, along with a letter contending that prison officials would not respond to his complaints. Plaintiff also submits a letter he received in response, in which the grievance was returned to Plaintiff with directions to submit it at Scotland in accordance with standard administrative remedy procedures. Plaintiff does not contend that he submitted the grievance at Scotland as directed.

The second grievance attached to the Complaint is dated January 31, 2012. (Id. at 10.) This grievance reflects that it was received by a correctional officer on February 1, 2012. In this grievance, Plaintiff asks for a new order of Clonidine medication and says that he has not had the medication for four days, causing him to have high blood pressure, cramps, head pain, vomiting, and an eye problem. (Id.)

Defendants support their Motion for Summary Judgment with affidavits and other documents. (Defs'. Mem. [Doc. #25].) Sorrell Saunders, a correctional administrator at Scotland, states in his affidavit that the January 19, 2012 lockdown of Scotland was ordered by the officer-in-charge due to "continuous fighting and assaults conducted by/on inmates." (Sorrell Aff. [Doc. #25-3] at 1.) On February 8, 2012, an attempt to bring Scotland back to normal operating procedures was made, but the lockdown continued because "inmates began assaulting staff and refusing to obey orders given by staff." (Id. at 2.) According to the affidavit, the facility returned to normal operations on February 16, 2012, a few days after Plaintiff filed his Complaint in this case.

Defendants' records show that during the lockdown, certain activities were curtailed and inmates were subject to reduced freedom of movement. Close custody inmates such as Plaintiff were served meals in their cells. (Crutchfield Aff. [Doc. #25-1] at 2.) However, according to Defendants, medical coverage continued 24 hours per day, 7 days per week. (Id.) In addition, inmates in close custody had access to sinks and toilets in their cells, and showers resumed for inmates on January 26, 2012. (Id.) Defendants further aver that Scotland's ventilation system was tested by an independent entity, along with the sanitation of its showers and dayrooms, and passed with a 98.6 rating. (Id.) Defendants also aver that Scotland has approximately 144 programs per month and provides vocational classes such as for GED, electrical wiring, sewing, and a Braille program, although Plaintiff contends that at least some of these programs were not available for a few weeks during the lockdown.[1] (Id.) As for Plaintiff's toilet, Defendant Crutchfield states in his affidavit that no one can recall complaints by Plaintiff regarding his toilet during the relevant time period, but that plungers were available from any available staff as they made their hourly rounds.[2] (Id. at 3.)

Defendant Gallien submitted an affidavit stating that he, as assistant unit manager, operated under the guidelines of the facility administrator related to the lockdown. (Aff. [Doc. #25-2] at 1.) Defendant Gallien also states that Plaintiff's January 22, 2012 grievance was not ever submitted to staff for processing. With respect to the January 31, 2012 grievance,

---

[1] Defendant Crutchfield attached to his affidavit a copy of Scotland's January 2012 monthly services calendar [Doc. #25-1 at 6] which lists several religious services occurring on almost every day of the month. In addition, Plaintiff states in his "Answer to Defendants['] Answer" [Doc. #11] that "programs just started back in March 2012."

[2] Plaintiff later states that he and staff reported his stopped-up toilet and that "Officer Locklear on Sergeant Pattison['s] shift came with maintenance man Barton." (Response [Doc. #11] at 1.)

Defendant Gallien explains that the prison's administrative remedy procedure has three steps. The final step consists of a review by the Inmate Grievance Review Board, and Plaintiff's January 31, 2012, grievance did not reach this final step until March 26, 2012. The grievance documents submitted with the affidavit reflect that Defendant received his requested blood pressure medication by February 27, 2012, and the January 31, 2012 grievance was therefore resolved.

A registered nurse, Stephanie Leach, also submitted her affidavit. She is located in Raleigh and holds the position of Risk Manager/Standards Director in the Department of Public Safety, Division of Adult Correction. She states that she examined Plaintiff's medical records to determine if he saw medical personnel between January 19, 2012, and March 31, 2012. The records show that Plaintiff submitted a sick call appointment request on February 9, 2012, complaining of not being able to keep food on his stomach, being cold, head pain, and stomach cramps. In addition, on February 20, 2012, Plaintiff completed a sick call request complaining of head and chest pain, stomach cramps, an eye problem, breathing problem, and that he felt his blood pressure was high. He was seen on February 27, 2012, and was assessed as being constipated. He was given Ibuprofen and a stool softener and told to return if his symptoms persisted. (Leach Aff. [Doc. #25-4] at 1-2.) The records also indicate that he was issued his requested high blood pressure medication. (Grievance Response [Doc. #25-2 at 15]; Plaintiff's Exs. [Doc. #28 at 19]). Plaintiff completed two additional sick call requests for congested nose, eye pain, and constipation. However, according to the medical records, when inquiry was made, Plaintiff stated that his requests had been addressed. (Leach Aff. at 2-3.) On March 20, 2012,

Plaintiff completed another sick call request complaining of head and chest pain, eye problems, and breathing problems. Nurse Torres saw him on March 27, 2012, and noted that his blood pressure was elevated and that his eye pain was related to an old stab wound. He was to return to medical in two hours for a recheck and for a doctor's appointment. A mental health referral was also to be completed. Plaintiff agreed with that plan.

Defendants contend that summary judgment should be granted in their favor because Plaintiff has not exhausted his administrative remedies, his claims for declaratory and injunctive relief are moot, he cannot show that his constitutional rights were violated, respondeat superior liability is not applicable to Plaintiff's claims, and monetary damages are not available from Defendants in their official or individual capacities.

Plaintiff filed a Response to Defendants' motion. He focuses on more fully explaining the conditions under which he is housed and devotes little time to the issue of the exhaustion of his administrative remedies. For example, he contends that his rights have been violated because he is not allowed to move freely "in & out of his room," he is not allowed to wear a jacket indoors, and he is only allowed "nine hours a day out of his room plus 45 minute out door exercise three times a week." With respect to the grievances, Plaintiff simply says that he sent a copy of a grievance to Director Lewis' office, which sent it back to Scotland, and that Defendant Crutchfield failed to respond to it. (Response [Doc. #28] ¶ 4.) Plaintiff has complained throughout the case of Defendants not responding to discovery. The Court denied his motion to compel discovery (Doc. #21 and text order dated 3/28/2013 (a copy of which was sent to Plaintiff)) and explained that he must first properly serve a discovery request.

Plaintiff has not shown that he has properly served discovery to which Defendants have not responded.

II.    DISCUSSION

A.    Standard

Summary judgment is appropriate only when no genuine issue of material fact exists. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). A genuine issue of fact exists if the evidence presented could lead a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A court considering a motion for summary judgment must view all facts and draw all reasonable inferences from the evidence before it in a light most favorable to the non-moving party. Id. The proponent of summary judgment "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). If the movant carries this burden, then the burden "shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." (Id. at 718-19 (citing Anderson, 477 U.S. at 247-48).) A mere scintilla of evidence supporting the non-moving party's case is insufficient to defeat a motion for summary judgment. See, e.g., Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994); see also Anderson, 477 U.S. at 248 (non-moving party may not rest upon mere allegations or denials.)

B.    Exhaustion

Pursuant to 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in

any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." In <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002), the Court held "that the PLRA's exhaustion requirement applies to all inmate suits about prison life." Exhaustion of available administrative remedies is mandatory and a prerequisite to suit. <u>Anderson v. XYZ Corr. Health Servs., Inc.</u>, 407 F.3d 674, 676-77 (4th Cir. 2005); <u>see also</u> <u>Porter</u>, 534 U.S. at 524 ("Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory. All available remedies must now be exhausted; those remedies need not meet federal standards, nor must they be plain, speedy, and effective. Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit." (citations and internal quotation marks omitted)). In this case, Plaintiff's claims involve his conditions of confinement, and such claims must be fully exhausted prior to Plaintiff filing suit.

The record shows that as of the time of the filing of Plaintiff's Complaint, Plaintiff had not fully exhausted any of his claims. He relies upon the two grievance forms discussed above. With respect to the grievance dated January 22, 2012, Plaintiff contends that he mailed a copy of that grievance directly to the office of Defendant Lewis, the Director of the Division of Prisons. However, the February 9 response from Director Lewis' office to that grievance advises Plaintiff to submit his grievance at Scotland in accordance with standard procedures, but there is no evidence that Plaintiff did so. The grievance itself fails to show that it was received by a corrections official at Scotland. Plaintiff does not contend that he submitted the grievance at Scotland as directed. Thus, the contentions related to the January 22 grievance were never exhausted.

The second grievance dated January 31, 2012, which relates only to Plaintiff's request for certain high-blood pressure medication, shows that it was received by a corrections official on February 1, 2012, about 20 days before Plaintiff filed this action. However, Defendants show that the January 31 grievance did not make its way to the third step in the grievance process until March 26, 2012, well after the filing of this action in February 2012. (Grievance [Doc. #25-2] at 13.) Thus, Plaintiff failed to fully exhaust his January 31, 2012 administrative grievance prior to filing suit. See Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999) ("While we recognize that plaintiff made some attempts to go through the prison's grievance procedures, we must dismiss plaintiff's complaint because he filed his federal complaint before allowing the administrative process to be completed."); Woodward v. Daugherty, 845 F. Supp. 2d 681, 684 (W.D.N.C. 2012) (prisoner may not exhaust during pendency of federal suit); Harris v. Midford, No. 1:10cv263, 2011 WL 1601446 (W.D.N.C. Apr. 27, 2011) (prisoner does not comply with PLRA by exhausting remedies during the course of litigation); Rogers v. Bullock, No. 1:06CV350, 2007 WL 2712922 (M.D.N.C. Sept. 14, 2007) ("the record shows that Plaintiff Rogers had not exhausted his administrative remedies regarding his food claims at the time he filed this section 1983 action. Under the authority of 42 U.S.C. § 1997e(a), Booth v. Churner, and Johnson v. Jones, the Court finds that this claim must be dismissed for lack of proper exhaustion."), aff'd, 280 F. App'x 286 (4th Cir. 2008).[3]

_____

[3] The Court further notes that with respect to the January 31, 2012 grievance related to Plaintiff's high-blood pressure medication, the record establishes that by February 27, 2012, Plaintiff was issued the Clonidine medication he requested. (Grievance Response [Doc. #25-2 at 15].) Thus, the issue raised in the January 31, 2012 grievance was resolved prior to the conclusion of the administrative grievance process. Moreover, in the circumstances, it does not appear that the issue raised in the January 31 grievance would support a claim that prison officials were deliberately indifferent to Plaintiff's medical needs in any event, given the records of multiple medical visits and prescriptions in February and March 2012.

Thus, in light of the undisputed evidence, the Court concludes that Plaintiff did not exhaust his administrative remedies prior to filing suit. Moreover, there is no evidence from which a reasonable factfinder could conclude that Plaintiff was prevented from exhausting his administrative remedies. Accordingly, this action should be dismissed without prejudice to Plaintiff fully exhausting his administrative remedies.

C.      Remaining Arguments and Contentions

Defendants argue on several other bases that Plaintiff's claims should be dismissed. Because Plaintiff has not exhausted any of his claims, the claims are not properly before the Court. Should Plaintiff exhaust his remedies and re-file this action, Defendants' remaining arguments for dismissal of those claims may be presented.

Finally, the Court notes that for his part, Plaintiff raises additional contentions in several "Supplements" and "Notices" [Docs. #14, 17, 22, 29, 31, 32, 33, 34, 35, 36, 37, 38] complaining of various on-going aspects of prison life that occurred after the filing of the Complaint. To the extent Plaintiff requests leave to add additional claims in this case, that request will be denied. Plaintiff must exhaust his administrative remedies with respect to any new claim or contention he wishes to raise, and must then file a separate action on the proper forms, setting out the specific basis for his claims.

III.    CONCLUSION

For the foregoing reasons, IT IS ORDERED that Defendants' Motion for Summary Judgment [Doc. #24] is granted and this action is dismissed without prejudice to Plaintiff fully exhausting his administrative remedies.

This, the 27th day of February, 2014.


                                        /s/ Joi Elizabeth Peake
                                    United States Magistrate Judge